Good morning, Judge Nelson, Judge Fletcher, Judge Bybee, my name is David Porter. I'm with the Federal Defender's Office for the Eastern District of California, and I represent the petitioner, Anthony Smith. The issue in this case is starkly presented. It is an issue that has bedeviled the circuit for almost two decades. Whether the bright-line rule of stop clock, which was created in 1965 by the Supreme Court in Burnett and applied by this Court sitting en banc in Soka Gonzales, applies, or whether the subjective diligence throughout the limitations period suggested by some three judge panels of this circuit applies, make no mistake about it, these tests are, as Judge Murguia said, irreconcilable. What do we do with Judge Berzon's opinion for the panel in Gibbs? Your Honor, as we explained in the — in our brief, it is illogical and irreconcilable with the Supreme Court decision in Burnett and Soka Gonzales to say, on the one hand, that stop clock governs, but on the other hand, the Court may consider as kind of a secondary or tertiary matter whether the petitioner was diligent at some other time after the extraordinary So counsel, if we apply the diligence throughout the period, the rule that we tried to apply in Luna and Gibbs, do you lose? Yes.  So you have to have — you have to have this Court — the panel apply SOCOP, or you don't, or you can't prevail today. That's — I mean, that makes things very clear for us, and that would be actually very helpful to know that, but it would — it might change the tenor of the argument. That is very clear, Your Honor. I think both sides agree to that. And here's — here's why they're irreconcilable. The diligence throughout the limitations period test completely subsumes the stop clock test. Right? The stop clock test just says whether the person was diligent during that period of extraordinary circumstances. If you're going to look at diligence throughout the limitations period, there's no reason to have the first test. You don't — you can't — you can't apply both tests. The — the diligence throughout the period totally subsumes the stop clock test. Well, let me ask, how — your opening brief indicates that you think Gibbs is inconsistent with our en banc decision in Scoop. But if so, how would you reconcile the reasoning in holding in Scoop, Gonzalez, and Pace? Your Honor, Pace was not primarily about equitable tolling at all. Pace was about statutory tolling, not equitable tolling. And as this Court stated in LeGrand v. Swartha, that's Judge Reinhart's opinion, he explained why Pace isn't relevant in this case. Pace involved a four-year delay before the person was even done with the State court exhaustion requirement. That doesn't apply anymore since States have adopted, by and large, the one-year statute of limitations for habeas corpus in their own proceedings. So that — that — that issue is not coming — is not even coming up anymore. So as — as Judge Reinhart explained, Pace is — is — just isn't — is not relevant in this situation. Whereas Sokov-Gonzalez is directly relevant, Your Honor. That's where Judge Pragerson said for an en banc court — in fact, it was unanimous on this point. Two other judges dissented on — on another point. It's unanimous that the — the clarity and treating similarly situated Petitioners similarly is — is the benefit of the stop-clock rule. If you apply this diligence throughout the period, that totally destroys — client gets the benefit of. So he — he writes his lawyer, and he says, look, I need the — I need the records. And the lawyer delays a month or so and finally does give him the record, leaving him actually quite a bit of — quite a bit of time. Now, in your practice, in your understanding, once a Supreme Court — a State Supreme Court denies a petition so that we start that — we start that clock, do the prisoners always have — already have the records in hand? I'm trying to — I'm trying to figure out sort of as a practical matter. Right. How do prisoners, if they're going to decide that they're going to represent themselves pro se for — on their habeas, how do they get the record? And do we have to ding every day after the California Supreme Court denies the writ that they don't get the record? Do they get an additional day for that? It's — first of all, in this case, it was two months that the — that Scott Conklin held on. Yeah. What if it had just been two days? Would you get — would he get two days? If the Petitioner could show that those were extraordinary circumstances, and I think that's what your question is getting at, were these extraordinary circumstances? What made this extraordinary? I mean, I've — we've seen a lot of — It's extraordinary that he has to — We see a lot of cases in which — in which lawyers don't respond immediately to their clients' requests to send records. So sometimes it takes a little while to gather things. Is a lawyer afforded a reasonable amount of time to do this? Or are we dinging him for every day he doesn't get the record? This Court can clearly hold that failure to follow the State bar requirement if you turn over in a timely manner the records and Petitioners being forced to file a State bar complaint against that lawyer, and then the State lawyer still taking several weeks before responding to that State bar complaint, and finally, after two months, I believe 65 days, returning the client's own records to him, that is an — that is without doubt an extraordinary circumstance. What if it had been two weeks? We'd have to — the Court would have to examine that and look at did the — how many times did he ask for it? Did he call immediately to the lawyer upon hearing of — of the denial? Did he file a State bar complaint? Did the lawyer timely respond to the State bar complaint? These are all the fact-intensive circumstances that courts must inquire about to determine whether the circumstances are extraordinary and whether they prevented the party from failing on time. Well, what evidence is in the record that the two-month delay of the 66 days in getting his record caused him to file his habeas petition late? Judge Nelson, that's — with all due respect, that's not the test. The test is whether that period, whether he was prevented from filing during that period, during the period of the extraordinary circumstances. And he was because, as this Court said in Espinoza-Matthews and many other cases, it is unreasonable — and here is the direct quote — it is unrealistic to expect a habeas petitioner to prepare and file a meaningful petition on his own within the limitations period without access to his legal file. I'd like to go back to Judge Barbee's question. If we stop the clock, how long should we stop the clock? If the records don't show up for one year, two years, three years, how long should we stop the clock? Until those extraordinary circumstances are lifted, until the person gets his — gets his materials back. I've got a different question. And you may not be the right person to answer it, but you're the person I've got in front of us. If we conclude that there's an irreconcilable conflict between Sokop — Sokop Gonzales and Gibbs, as you contend, Gibbs is, of course, the later case, and it's a panel opinion, do we have to go en banc to get rid of Gibbs, or do we just get to say that Gibbs is wrong and we could ignore that post-Sokop Gonzales case because we think it's wrong? I think you can follow Sokop Gonzales, and I think this Court has an obligation to follow Sokop Gonzales, as it believes it is required by the Supreme Court. And then is we don't need to go en banc to get rid of Gibbs? I don't think you need to at this point. And I would urge the Court to look at — But if we simply announced that we were going to follow Sokop Gonzales, wouldn't that absolutely put us in an irreconcilable conflict with Luna and Gibbs? No. In Grant v. Swarthout, the Court said we have never, and never is underlined in the original, we have never denied relief to a Petitioner because he did not exercise diligence after the relevant extraordinary circumstances. But we certainly have considered the possibility. Yes. Yes, you have. But you have never so held, and I think that that is the distinction that you don't need to go in. But there would be a reason to remand to a district court for further consideration if we are never going to hold that. Yes. I agree. We're in the process of about to take you over, but don't worry. We'll give you a chance to respond. One more question. Thank you. Obviously, Sokop Gonzales was in the context of a motion to reopen in front of the BIA. Yes. This is habeas. Yes. Supreme Court is, as you know, quite anxious to police various aspects of habeas corpus under AEDPA. Should we take that into consideration as we look at what the rule is likely to be from the United States Supreme Court confronted with this question? Yes, I would encourage that, and I would encourage the Court to look at Artees, the January decision from the Supreme Court of this year that specifically endorsed the stop clock. So I would welcome that inquiry from this Court. Okay. Thank you. And you're over, but we'll give you a chance to respond. I appreciate that. Thank you. Good morning. May it please the Court. Justin Riley on behalf of the Warden. I agree. Sokop Gonzales is irreconcilable with Gibbs. Gibbs attempts to apply PACE, which came after Sokop Gonzales. PACE was an AEDPA case. It applied the current version of the statute of limitations. It decided both the questions of statutory tolling and equitable tolling. Just in case it might be confusing, in 2016, the Supreme Court came out with a case of this Menominee Indian tribe versus Wisconsin of Wisconsin, I'm sorry, versus the United States. They said in no uncertain terms, we decide PACE solely on diligence. Diligence is an element that must be met before we grant equitable tolling in an AEDPA case. Right. But Mr. Smith was surely diligent in trying to get his records from his lawyer. Well, the question is, does he get credit for the time that he spent contacting his lawyer, and then when he didn't get satisfaction, contacting the bar? I mean, it's clear Smith was very anxious to get these records. Nobody should fault him for at least those first couple of months. He was diligent during those first couple of months. Okay. So why don't we just give him another 90 days or so?  Now, remember, Petitioner would have you apply diligence only inside of a time of impediment. PACE applied the diligence requirement or analyzed the diligence requirement both before the statute of limitations started to run and after the impediment had been lifted, and only in those two timeframes. Now, whatever you think about PACE, that's completely at odds with keeping the diligence requirement inside the impediment time. One of the problems with the recent Supreme Court case that Petitioner cites in his reply brief is they espouse a stop-clock approach. That is not the stop-clock approach of the AEDPA. In Ardis, the Supreme Court was comparing two different kinds of tolling. One was a grace period tolling, which adds a certain amount of time after a triggering effect, and they were also analyzing a stop-clock style tolling statute of limitations, where if something occurs, they stop a stopwatch, and after the impediment is lifted, possibly they start the clock again. And they held the almost unremarkable conclusion that tolling means to stop the clock. That's unhelpful here. That begs the question, should the clock be stopped at all? During the 66 days, the clock should not be stopped at all because there is a causation problem and a diligence problem in this case. The problem with Petitioner's argument is that essentially he asked this Court to stop the clock. Imagine that with 10 months left on the statute of limitations, he was ready to hand over his Federal petition to the Federal court. But equity demanded that this Court allow him an additional 10 months and then 66 more days to sit on his rights because a year is a year. That can't be how equity is applied. Sotomayor, sit on his rights is rather a harsh way to characterize it. The statute of limitations is a year. We know that. Yes. And one can sort of build into our analysis of that one year that the statute gives him in that in many circumstances, one year is an appropriate time to sort of gather your arguments, do what you're going to do. Prisoners representing themselves pro se don't have easy access to the law library all the time. They're not necessarily learned in the law. They get help from the prisoners. I mean, it's not like somebody sitting in their own law office that can do something at the end of the week. So they're given a year, which is already not very much. And you're saying, well, you know, it turns out this guy only gets 10 months. Why is that consistent with the statutory period of a year in terms of what Congress probably had in mind? First of all, Congress never made any findings on the record that a year is what they thought it should take. Well, that's the year they gave a year. And we may infer from that that they thought the year was the appropriate time. And the other point is that the nature of timeframes is that the time will be luxurious for some and not enough for others. For example, in this case, the Petitioner simply photocopied — I'm sorry, simply copied down his petition for review, changing a few words here and there. A year would have been luxurious for him. Another Petitioner may need to — may get sick, may break a leg, may need to do some research, may need to present claims on collateral review because they weren't exhausted on direct appeal where they were here. And that will be not enough time for him. Time periods necessarily include some and exclude others. The predictability is in meeting the statute. If something happens, PACE demands that you be diligent and you try to get your petition on file. They even suggested to Petitioners who were confused about time periods, something may be happening that was rushing them, get your protective petition on file. You know, I hear all of that, and, of course, it's not implausible that those are important even controlling considerations, but one of the advantages to a statute of limitations is its clarity, is you've got a year. The rule that you're contending for is not clear because the rule you're contending for is, OK, you've got 10 months, and you've got to show diligence within that 10 months. So what if there was two months, and you have to show diligence within that two months? All of a sudden, we're down into the weeds with factual determinations for these cases instead of just numerical. The rule for which your adversary contends is very clean and very easy to apply. It's cleaner, except for the Supreme Court has warned us time and again that equitable tolling analyses are highly fact-dependent. Unfortunately, equity sends this Court and the parties into the weeds every time a Petitioner wants to seek equity. But we're back out of the weeds as soon as we determine that there were extraordinary circumstances that would forgive the first two months. I'm not sure I understand the question. You say you're back in the weeds for equitable tolling. But in this case, and in cases that are comparable, you are out of the weeds and into territory where the rule is clear once you've determined that there were extraordinary circumstances during those first two months when he didn't get the record. Then that writes out causation out of the standard. Holland v. Florida, one of the most … And, of course, causation is not part of the statute of limitations. It is. The Holland v. Florida recounted the standard as prevented timely filing. Those are the last three words of the equitable tolling standard in the ADPA context. Prevented timely filing. So we have to look at those 66 days. And, yes, it's clean to say it was only 66 days, he was diligent during that time. But we also have to look at did that cause untimely filing. And here, diligence severed that causation because he had 10 months where the record is devoid of any evidence that he needed anything more than a couple of days to copy down a few words. When you make that argument, are you saying that a motion to reopen under Socopa-Gonzalez is then analyzed differently from statute of limitations under ADPA? It quite possibly could. First of all, Socopa-Gonzalez was dealing with a very, very short time period of, I believe, 90 days. I'm not familiar with all the ins and outs of INS cases, but I do know that they … those courts were not dealing with the Federalism problem we have in the ADPA. They were not dealing with such a harsh statute as the ADPA is. And they weren't dealing with Pace. As for clarity, the Federal statute of limitations has a whole bunch of almost ambiguous, vague things built in, and that is there's exceptions. There are exceptions for Supreme Court cases that come out in between the time of the finality of conviction and the time of filing the Federal petition. Those restart and stop the clock, depending on variables. There is, with diligence, could he have learned of a claim? For example, maybe a prosecutor releases some Brady information long after a conviction. The Federal statute of limitations builds that right in. I don't think it's quite fair to say that the legislature was looking for absolute clarity and, unfortunately, I think may send us into the weeds time … sometimes. I would love to answer any other questions. Robertson, thank you very much. Thank you. Would you please put one minute on the clock for Mr. Porter? Thank you, Judge Fletcher. In terms of a luxurious period that my colleague was talking about, he makes the same mistake that the magistrate judge made in this case. He did not simply repeat verbatim or change a few words. He actually deleted one of the claims that was in the State court proceedings. More importantly, this gets us into the speculation that Socop Gonzales and the Supreme Court have said you should not get into. When you have extraordinary circumstances, you are fairly direct in figuring out whether the person is diligent in overcoming that particular circumstance. And when he has, the clock starts again. But if you're not focused on that period, what does diligence during the period after extraordinary circumstances mean? How diligent does the person have to be? What do you … how much of the record do they have to have? These are the questions that have confined … really hurt the district courts. Now, in Gibbs, this Court said courts should not take it upon themselves to decide how much a claimant needs to file a Federal case. That is exactly what the district court did in this case. It said, you have 10 months, that's enough. Thank you. Thank you very much. Thank both sides for their arguments. Thank you. Smith v. Davis now submitted for decision. The next case on the argument calendar this morning, United States v. Davenport.
judges: D.W. Nelson, W. Fletcher, Bybee